[Cite as *State v. Lewis*, 2023-Ohio-4687.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                 :

        Appellee            :    C.A. No. 29798

v.                          :    Trial Court Case No. 2022 CR 02793

JAQUADE D. LEWIS        :    (Criminal Appeal from Common Pleas
                              :    Court)

        Appellant       :

                              :

. . . . . . . . . . .

O P I N I O N

Rendered on December 22, 2023

. . . . . . . . . . .

JOHNNA M. SHIA, Attorney for Appellant

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Attorney for Appellee

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Jaquade D. Lewis appeals from his conviction for felonious assault (deadly weapon) and other offenses. For the reasons set forth below, we affirm.

**I.      Facts and Procedural History**

{¶ 2} On September 30, 2022, Lewis and various members of his extended family were gathered for the funeral of another family member. The undisputed evidence indicated that some family members became involved in verbal arguments while at the funeral home. Afterward, the family members traveled to the burial site, where more arguments broke out. At least one of these arguments became physical, and Lewis fired a handgun.

{¶ 3} Following an investigation, Lewis was arrested and indicted on four counts of felonious assault, one count of having weapons under disability, and one count of improper handling of a firearm. Each of the felonious assault counts carried a three-year firearm specification.

{¶ 4} The matter proceeded to trial. At trial, the State presented the testimony of Tanya Blake ("Blake"), Lewis's aunt. According to Blake, she and Lewis engaged in a verbal argument while at the funeral home. Thereafter, the family proceeded to the burial site, where Blake's daughter, Jonae Peck, engaged in a verbal fight with Lewis's sister, Latonya Lewis. That fight became physical, at which point Lewis and Blake attempted to separate the two women. Blake testified that she told Peck and another daughter, Jerrica Blake, to return to Peck's car and leave the site. Blake testified that she then heard a gunshot and observed Lewis with a gun. Blake indicated that Lewis had fired toward Peck's vehicle while Peck, Jerrica, and a minor child were in the vehicle. Blake then saw Jerrica exit the vehicle, run toward Lewis, and hit Lewis. Blake again told Jerrica to return to the car and leave the site. When Blake heard two more gunshots, she turned toward Lewis and observed her son, Nsilo Hunter, running away. Blake

testified that she asked Lewis, "what are you doing?" and Lewis did not respond. Instead, he walked to his car and drove away. Blake testified that Hunter suffered a gunshot wound.

{¶ 5} Nsilo Hunter testified that he observed his sister, Jonae Peck, involved in a physical fight and then saw Lewis shoot toward Peck's car as Peck and Jerrica were trying to get into the vehicle. Hunter testified that he began to wrestle with Lewis for control of the gun. According to Hunter, he was shot in the leg during the struggle.

{¶ 6} Jonae Peck also testified at trial that she and Lewis had argued at the burial site. They stopped arguing long enough for the prayer service to conclude. According to Peck, everyone was dispersing to return to their cars when she and Lewis resumed their argument. At some point, Latonya Lewis approached and hit Peck in the face. Thereafter, Peck and Latonya engaged in a physical altercation, and family members tried to separate them. Peck testified that her mother told Jerrica and her to get in the car and leave; they complied, but as they began to drive off, Lewis fired his gun toward the car. Peck testified that Jerrica jumped out of the car, ran over to Lewis, and punched Lewis. Peck also observed Hunter approach Lewis, and when Hunter reached Lewis, he attempted to grab Lewis's gun and she heard another gunshot.

{¶ 7} Jerrica Blake ("Jerrica") testified that she and her one-year-old daughter had ridden to the burial site in Peck's vehicle. She testified she had observed Peck and Latonya engaged in a verbal altercation, and that the altercation evolved into a physical fight. Jerrica testified that as the family was breaking up the fight, she returned to Peck's vehicle and put her daughter into her car seat. According to Jerrica, she and Peck were

in the vehicle when she heard a gunshot. She testified that the bullet hit Peck's car. At that point, Jerrica exited the car because she was angry that Lewis had fired a gun in the direction of a car in which her child was seated. She ran over and punched Lewis. Jerrica testified that Hunter then engaged in a struggle with Lewis for control of the gun.

{¶ 8} The jury found Lewis not guilty on two counts of felonious assault as related to Hunter and Jerrica's child. The jury was unable to reach a verdict on a second count of felonious assault related to Hunter, and that charge was subsequently dismissed by the State. The jury convicted Lewis on the count of felonious assault (deadly weapon) related to Jonae Peck and the related firearm specification. The jury also convicted Lewis of improper handling of a firearm. The trial court found Lewis guilty on the charge of having weapons under disability. The trial court sentenced Lewis to an aggregate prison term of five to six years in prison.

{¶ 9} Lewis appeals.

## II.     Manifest Weight and Sufficiency

{¶ 10} The sole assignment of error asserted by Lewis states as follows:

LEWIS' CONVICTION IS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND THE MANIFEST WEIGHT OF THE EVIDENCE WEIGHS AGAINST THE VERDICT.

{¶ 11} Lewis contends the evidence did not support his conviction for felonious assault related to Jonae Peck. (He does not challenge his convictions on the other offenses.) In support, he claims there was no evidence that he aimed his gun at anyone.

He further claims the testimony of the State's witnesses was inconsistent and not supported by the physical evidence in the record.

{¶ 12} "[S]ufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). It is essentially a test of adequacy; whether the evidence is legally sufficient to support a verdict is a question of law. *Id.*

{¶ 13} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the crime's essential elements proven beyond a reasonable doubt. *Id.*

{¶ 14} When an appellate court reviews whether a conviction is against the manifest weight of the evidence, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A case should not be reversed as being against the manifest weight of the evidence except " 'in the exceptional case in which the evidence

weighs heavily against the conviction.' " (Emphasis added.) *Id.*

{¶ 15} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. *Accord State v. Winbush*, 2017-Ohio-696, 85 N.E.3d 501, ¶ 58 (2d Dist.). As a result, a determination that a conviction is supported by the weight of the evidence will also be dispositive of sufficiency. *State v. Farra*, 2d Dist. Montgomery No. 28950, 2022-Ohio-1421, ¶ 50.

{¶ 16} Lewis was convicted of felonious assault with a deadly weapon, which is proscribed by R.C. 2903.11. That statute states, in pertinent part, that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A)(2). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶ 17} An attempt to commit an offense is made when a person purposely or knowingly engages in conduct that, if successful, would constitute or result in the offense. R.C. 2923.02(A). A "criminal attempt" is an act constituting a substantial step in a course of conduct planned to culminate in the commission of the crime but which falls short of completion of the crime. *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, 781 N.E.2d 980, ¶ 101, citing *State v. Woods*, 48 Ohio St.2d 127, 357 N.E.2d 1059 (1975), paragraph

one of the syllabus.   A substantial step requires conduct that is strongly corroborative of the actor's criminal purpose.   *Group* at ¶ 101.   Thus, to establish the "attempt to cause physical harm" element of felonious assault, the State was required to prove, beyond a reasonable doubt, that Lewis took some overt action constituting a substantial but ineffectual step toward accomplishing physical harm through use of a deadly weapon. *See State v. Kline*, 11 Ohio App.3d 208, 214, 464 N.E.2d 159 (6th Dist.1983).

{¶ 18} Lewis's claim that the evidence did not support his conviction for felonious assault of Jonae Peck rests upon assertions made by defense counsel during closing argument.   First, counsel argued there was no evidence that Lewis fired the gun directly at anyone.   Indeed, counsel indicated the gun was fired merely to "break up the altercation."   Further, counsel noted that the witnesses were not consistent regarding whether Jonae was in her car at the time it was hit by a bullet.   Specifically, counsel noted that Hunter testified that Jonae had been getting into her car when the shot was fired, while Blake, Peck, and Jerrica testified that Jonae had actually been in the vehicle when the gun was fired.   Counsel also noted that the witnesses' testimony was not consistent regarding the number of shots fired.   Specifically, Blake, Peck, and Jerrica testified that three shots were fired during the incident, but Hunter testified there were five or six shots fired.   Counsel further noted that only two bullet casings were recovered from the scene.

{¶ 19} Obviously, the jury was made aware of these claimed inconsistencies. Importantly, there was no dispute that Lewis fired a gun and that a bullet hit Peck's car. Further, all the witnesses who observed the incident indicated that Peck was at or in her car when Lewis fired in that direction.

{¶ 20} Evidence that a defendant fired a gun in the direction of the victim is sufficient to demonstrate that the defendant acted knowingly for purposes of a felonious assault. *State v. Fox*, 2018-Ohio-501, 106 N.E.3d 224, ¶ 14 (10th Dist.); *State v. Hoffert*, 1st Dist. Hamilton No. C-020168, 2002-Ohio-6343, ¶ 11. Even firing a weapon randomly in the direction of individuals arguably within range of the shooter is sufficient to demonstrate an attempt to cause physical harm. *State v. Phillips*, 75 Ohio App.3d 785, 792, 600 N.E.2d 825 (2d Dist.1991); *State v. Gregory*, 90 Ohio App.3d 124, 129, 628 N.E.2d 86 (12th Dist.1993).

{¶ 21} We must give substantial deference to the jury, which had the opportunity to see and hear the witnesses' testimony. "The trier of fact is better situated than an appellate court to view witnesses and to observe their demeanor, gestures, voice inflections and to use those observations in weighing credibility." *State v. Jackson*, 2015-Ohio-5490, 63 N.E.3d 410, ¶ 50 (2d Dist.), citing *State v. Lewis*, 4th Dist. Scioto No. 01CA2787, 2002 WL 368625 (Feb. 25, 2002).

{¶ 22} The outcome of this case rested on the credibility of the witnesses. The jury, as the trier of fact, was free to believe all, part or none of the testimony of each witness. *Jackson* at ¶ 50. Based upon this record, we cannot conclude the jury lost its way in finding that Lewis knowingly fired a gun in the direction of Jonae Peck. Accordingly, the sole assignment of error is overruled.

### III. Conclusion

{¶ 23} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, J. and LEWIS, J., concur.