[Cite as *In re M.I.*, 2024-Ohio-2266.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE M.I.                         :
                                   :                    No. 113093
A Minor Child                      :
                                   :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 13, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL-22-107930

---

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Allison McGrath, Assistant Prosecuting
Attorney, *for appellee.*

Wegman Hessler Valore and Michael Gordillo, *for
appellant*.

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant M.I. appeals from her adjudication of delinquency relating to felonious assault involving a firearm and multiple victims. For the reasons that follow, we affirm.

**Procedural and Factual History**

{¶ 2} The state filed a four-count complaint in Cuyahoga County Juvenile Court, charging M.I., d.o.b. 8/6/2004. M.I. was accused of engaging in conduct that, if committed by an adult, would constitute three counts of felonious assault, second-degree felonies, and one count of discharge of a firearm on or near prohibited premises, a third-degree felony. Each count was subject to both one- and three-year firearm specifications. On December 6, 2022, the trial court found probable cause on each count. The trial was scheduled for July 10, 2023.

{¶ 3} The state presented testimony from four witnesses: Officer Tyeisha Sain, Detective Shaun Polocy, H.H., and S.C. The following relevant facts were adduced at trial.

**Officer Tyeisha Sain's Testimony**

{¶ 4} On the afternoon of June 23, 2022, Officer Sain and her partner responded to 911 calls concerning shots fired near 102nd Street and St. Clair Avenue in Cleveland, Ohio. The victim, K.H., reported that M.I. shot at her and two friends, S.C. and T.A. The conflict between K.H. and M.I. arose over R.C., a young man that both M.I. and K.H. were dating. M.I. learned that K.H. was pregnant with R.C.'s baby, and the two females argued three or four times over the phone in the months leading up to the incident. During these arguments, M.I. threatened to kill K.H. and her unborn baby.

{¶ 5} Officer Sain obtained statements from all three victims. K.H. told Officer Sain that her baby's father contacted K.H. and asked her to come over the

day of the incident. During the call, M.I. was in the background, threatening to kill her if she came to R.C.'s house. K.H. provided officers with M.I.'s pictures, phone number, Instagram, and Cash App usernames. After the initial police work, Officer Sain turned the case over to Detective Polocy.

**Detective Shaun Polocy's Testimony**

{¶ 6} Detective Polocy was assigned the case on June 26, 2022. He identified M.I. from the witness statements, photos K.H. provided right after the incident, information officers on the scene confirmed, as well as the 911 calls that came in at the time of the shooting. K.H. reported to Detective Shaun Polocy that M.I. was at R.C.'s house when K.H. called him on the day of the incident. She could hear M.I. making threats to kill her and her baby in the background. Despite M.I.'s threats, K.H., S.C., and T.A. went to R.C.'s house. R.C. stood on the porch with his mother and M.I. He had a gun in his waistband. K.H., M.I., and R.C. began arguing. At some point, M.I. hit R.C. in the face, grabbed the gun from his waistband, and began firing at K.H. and her friends. After the shooting, officers went to the location of the shooting with the victims and found five spent shell casings and eight live rounds in front of R.C.'s house. Using the phone number she used to communicate with M.I. in the months leading up to the incident, K.H. pulled up photos of M.I. from her Instagram and Cash App accounts. Law enforcement verified M.I.'s identity by running her contact information in the Ohio Law Enforcement Gateway ("OHLEG"). Based on the preceding information, Detective Polocy left a message for M.I. and conducted a phone interview when she returned the call.

**K.H.'s Testimony**

{¶ 7} K.H. had been dating R.C. for six or seven months before the incident. When K.H. learned she was pregnant, she contacted M.I. for the first time. K.H. and M.I. had communicated by phone three or four times before June 23, 2022. On the day of the shooting, R.C. called her to come over. K.H. testified that she did not know that M.I. was at R.C.'s house, and K.H.'s friends were not at her apartment when K.H. talked with R.C. about going to his house. As the three friends walked near R.C.'s house, he saw them. He called K.H. on her phone and told her to come over. K.H. was not angry, nor did she argue with anyone on the porch. K.H. described the incident as nonconfrontational, stating, "It didn't take long. The shooting just happened fast. It happened fast. There wasn't no argument, there wasn't no fight. It just happened." (Tr. 32:34.)

**S.C.'s Testimony**

{¶ 8} S.C. testified that she had been hanging out with K.H. the entire weekend at K.H.'s apartment. She knew that K.H. had been talking to R.C. before they left for the store because they used to argue a lot. As they walked near R.C.'s house, S.C. heard R.C. call K.H.'s name and saw K.H. head toward his house. However, she was standing by a stop sign, approximately five to seven houses away from R.C.'s house, when the shooting started. When S.C. heard gunshots, she began running and became separated from K.H. and T.A. She saw the shooter come off of the porch and chase them while shooting. She described the shooter as having

blonde hair. S.C. heard shots directed toward K.H., and then, as she ran, S.C. heard several shots in her direction.

**Adjudication and Disposition**

{¶ 9} The trial court found M.I. delinquent of Counts 1 and 3, felonious assault against victims K.H. and S.C., respectively; Count 4, discharge of a firearm on or near prohibited premises; and the one- and three-year firearm specifications on all three counts. At the disposition hearing on August 1, 2023, the court committed M.I. to the legal custody of the Ohio Department of Youth and Family Services for a minimum of two years and a maximum term not exceeding her 21st birthday.

{¶ 10} M.I. timely filed a notice of appeal and raised the following assignments of error:

### Assignment of Error No. 1

The trial court erred in denying M.I.'s Rule 29 motions because there was insufficient evidence to support the convictions.

### Assignment of Error No. 2

The trial court erred in denying M.I.'s Rule 29 motions where the convictions were against the manifest weight of the evidence.

### Assignment of Error No. 3

The trial court erred by allowing an improper identification of M.I. as the perpetrator.

**Law and Analysis**

**Sufficiency**

{¶ 11} In her first assignment of error, M.I. argues that the state failed to meet its burden of production on the counts of felonious assault, discharge of a firearm over prohibited premises, and firearm specifications. A juvenile may be adjudicated delinquent if there is sufficient evidence to prove, beyond a reasonable doubt, that the juvenile committed acts that, if committed by an adult, would constitute a crime. R.C. 2151.35(A); Juv.R. 29(E)(4); *In re R.S.,* 8th Dist. Cuyahoga No. 99562, 2013-Ohio-5576, ¶ 26*; In re Watson,* 47 Ohio St.3d 86, 91, 548 N.E.2d 210 (1989). In delinquency cases, claims concerning the sufficiency of the evidence and manifest weight are reviewed under the same standards applicable to criminal convictions. *In re R.S.* at ¶ 26. A challenge to the sufficiency of evidence is a question of law reviewed de novo. *State v. Taylor*, 8th Dist. Cuyahoga No. 111694, 2023-Ohio-928, ¶ 47; *State v. Hunter,* 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).

{¶ 12} A reviewing court must determine whether, after reviewing the trial evidence in the light most favorable to the prosecution, a rational trier of fact could find sufficient evidence for the essential elements of the crime that, if believed, could prove guilt beyond a reasonable doubt. *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, citing *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). The reviewing court must reverse a conviction if it concludes

that the state has failed to meet its burden of production at trial. *State v. Johnson*, 8th Dist. Cuyahoga No. 98245, 2013-Ohio-575, ¶ 37, citing *Jenks* at 259.

{¶ 13} In the instant case, M.I. contends that the state failed to present sufficient evidence that she fired a weapon at the victims or that she fired a gun at all. To prove that M.I. committed felonious assault, the state must prove that she caused or attempted to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance. R.C. 2903.11.

{¶ 14} The one-year firearm specification under R.C. 2941.141(A) requires proof that M.I. possessed a working firearm while committing the offense. R.C. 2941.141. *In re J.S.*, 8th Dist. Cuyahoga No. 94306, 2010-Ohio-3094, ¶ 25. A three-year firearm specification under R.C. 2941.145(A) requires proof, beyond a reasonable doubt, that M.I. displayed, brandished, indicated she possessed, or otherwise used a working firearm to commit the offense. *Id.* Proof does not require the production of the gun. *Id.* at ¶ 26.

{¶ 15} Additionally, to sustain an adjudication of delinquency concerning the discharge of a firearm on or near prohibited premises under R.C. 2923.162(A)(3), the state must prove that M.I. discharged a firearm upon or over a public road or highway.

{¶ 16} The state may prove the elements of an offense by direct evidence, circumstantial evidence, or both. *State v. Wells*, 8th Dist. Cuyahoga No. 109787, 2021-Ohio-2585, ¶ 25; *see State v. Durr*, 58 Ohio St.3d 86, 568 N.E.2d 674 (1991). It is well-settled that circumstantial evidence carries the same weight as direct

evidence. *State v. Wachee,* 8th Dist. Cuyahoga No. 110117, 2021-Ohio-2683, ¶ 37, citing *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13, citing, *State v. Treesh,* 90 Ohio St.3d 460, 739 N.E.2d 749 (2001).

{¶ 17} In the instant case, M.I. argues that the evidence is insufficient to sustain an adjudication of delinquency for felonious assault, discharging a firearm on prohibited premises, and the one- and three-year firearm specifications. We find M.I.'s argument unpersuasive.

{¶ 18} Here, the state presented the following evidence: Two witnesses, K.H. and S.C., observed M.I. running while shooting a gun at them. S.C. did not see her face but described the shooter's hair and knew she was a female. K.H. identified M.I. as the person who grabbed the gun from R.C.'s waistband and shot at her while chasing her on the day of the incident. Officers also recovered bullet casings and live rounds from the scene shortly after the incident.

{¶ 19} M.I.'s claim that the state produced insufficient evidence to adjudicate her delinquent because the gun was not recovered lacks merit. Recovery of the firearm is not an essential element of felonious assault, firing a weapon over prohibited premises, or the gun specifications. *State v. Bailey*, 90 Ohio App.3d 58, 627 N.E.2d 1078 (11th Dist.1992), citing *State v. Gaines*, 46 Ohio St.3d 65, 545 N.E.2d 68 (1989). "Even firing a weapon randomly in the direction of individuals arguably within range of the shooter is sufficient to demonstrate an attempt to cause physical harm." *State v. Lewis*, 2d Dist. Montgomery No. 29798, 2023-Ohio-4687, ¶ 20; *State v. Phillips*, 75 Ohio App.3d 785, 600 N.E.2d 825 (2d Dist.1991).

{¶ 20} M.I. also argues that inconsistent witness testimony rendered the state's evidence insufficient. Inconsistent or contradictory testimony does not automatically render a defendant's conviction against the manifest weight or sufficiency of the evidence. *State v. Flores-Santiago*, 8th Dist. Cuyahoga No. 108458, 2020-Ohio-1274, ¶ 40, citing *State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 Ohio App. LEXIS 2245, 7 (May 28, 1996). The state produced witness testimony that M.I. was observed shooting a gun in K.H. and S.C.'s direction when she hopped off the porch. Credibility and the weight of witness testimony are left to the trier of fact. Although K.H. and S.C. may not have agreed on every detail concerning the number of shots fired, they did agree on the fundamental facts. M.I. ran off the porch, chasing them while shooting a gun at them in broad daylight.

{¶ 21} M.I alleges that lack of clarity concerning the direction and number of shots fired entitles her to a reversal of the delinquency adjudication on sufficiency grounds. We disagree. As previously stated, only the essential elements of the alleged offense must be proven beyond a reasonable doubt. Just as the recovery of the weapon is not a required element of the offenses, neither is the exact number and direction of each shot fired. Having examined the evidence in a light most favorable to the prosecution, we conclude that the state produced sufficient evidence to prove that M.I. attempted to cause physical harm to K.H. and S.C. while brandishing, possessing, displaying, or using a firearm.

{¶ 22} There is sufficient evidence if believed by a trier of fact, to prove that M.I. discharged a firearm over a public road when she fired multiple shots at K.H.

and S.C. down the street. Moreover, the record contains sufficient evidence to establish each element of the offenses for which M.I. was adjudicated delinquent. For these reasons, M.I.'s first assignment of error is overruled.

**Manifest Weight**

{¶ 23} M.I. alleges in her second assignment of error the adjudication of delinquency is against the manifest weight of the evidence. "While the test for sufficiency requires a determination of whether the prosecution has met its burden of production at trial, a manifest weight challenge questions whether the prosecution has met its burden of persuasion." *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13; *Thompkins,* 78 Ohio St.3d at 390, 678 N.E.2d 541. When a reviewing court determines whether a judgment is against the manifest weight of the evidence, the court considers the entire record. *E.g., State v. Jordan,* Slip Opinion No. 2023-Ohio-3800, ¶ 17; *Thompkins* at 387; *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 24} In a bench trial, the trial court serves as the factfinder. *State v. Bell*, 8th Dist. Cuyahoga No. 106842, 2019-Ohio-340, ¶ 41; *State v. Strickland*, 183 Ohio App.3d 602, 2009-Ohio-3906, 918 N.E.2d 170, ¶ 25 (8th Dist.), citing *Cleveland v. Welms,* 169 Ohio App.3d 600, 2006-Ohio-6441, 863 N.E.2d 1125 (8th Dist.), citing *Thompkins* at 390; *see also State v. Kessler*, 8th Dist. Cuyahoga No. 93340, 2010-Ohio-2094, ¶ 13. In other words, the trial court determines the witnesses' credibility and the weight of the evidence. *See, e.g., State v. Lowry*, 12th Dist. Warren Nos. CA 2019-07-070 and CA2019-07-071, 2020-Ohio-1554, ¶ 19. The trial court is also

presumed to know and apply the law correctly unless the record affirmatively demonstrates otherwise. *State v. Kilbane*, 8th Dist. Cuyahoga No. 106753, 2019-Ohio-863, ¶ 15, citing *State v. Shropshire*, 8th Dist. Cuyahoga No. 103808, 2016-Ohio-7224, ¶ 37; *State v. Travis*, 8th Dist. Cuyahoga No. 110514, 2022-Ohio-1233, ¶ 19.

{¶ 25} In the instant matter, M.I. argues that the evidence presented at trial was not credible. M.I. contends that there was no DNA evidence, and the gun was not recovered. Furthermore, M.I. alleges that the state's case relies on a "single, combative witness." (Appellant's Br. p. 20) The state's primary witness, K.H., directly contradicted other witnesses' testimony and prior statements to law enforcement. For instance, during her testimony, K.H. denied that she intended to go to R.C.'s house to confront M.I. or that she even knew that M.I. was with R.C. However, K.H. told Officer Sain shortly after the incident that while on the phone with R.C., K.H. could hear M.I. in the background, threatening to kill her and her baby if she showed up at R.C.'s house. K.H. also testified that her friends were not at her apartment when she was on the phone with R.C. on the day of the shooting. She called them after she got off the phone with R.C. to go walking. In contrast, S.C. said she and T.A. were with K.H. at her apartment all weekend.

{¶ 26} It is undisputed that K.H. contradicted statements she made to police during the investigation and those made at trial. In bench trials like this, the court is free to believe some, all, or none of each witness's testimony, separating the credible parts of the testimony from the incredible parts. *State v. Williams*, 7th Dist.

Mahoning No. 21 MA 0097, 2022-Ohio-3292, ¶ 22; *State v. Barnhart*, 7th Dist. Jefferson No. 09 JE 15, 2010-Ohio-3282, ¶ 42, citing *State v. Mastel*, 26 Ohio St.2d 170, 176, 270 N.E.2d 650 (1971). M.I. has failed to point to evidence in the record that affirmatively demonstrates that the trial court clearly lost its way as the trier of fact. We cannot say that M.I.'s adjudications of delinquency for felonious assault, discharge of a weapon over prohibited premises, and firearm specifications were against the manifest weight of the evidence. Accordingly, M.I.'s second assignment of error is overruled.

**In-Court Identification**

{¶ 27} In the third assignment of error, M.I. challenges S.C.'s in-court identification as unreliable because S.C. testified that she did not see M.I.'s face during the incident. The standard of review of a trial court's admittance of an in-court identification is an abuse of discretion. *State v. Jenkins*, 8th Dist. Cuyahoga No. 105881, 2018-Ohio-2397, ¶ 36; *see State v. Walker*, 6th Dist. Lucas No. L-07-1156, 2008-Ohio-4614, ¶ 14, citing *State v. Graham*, 58 Ohio St.2d 350, 390 N.E.2d 805 (1979). A trial court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable. *State v. Hill*, 171 Ohio St.3d 524, 2022-Ohio-4544, 218 N.E.3d 891, ¶ 9, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 28} M.I. further alleges that S.C.'s identification was based on photos she saw after the incident and on K.H.'s phone.

In *State v. Jackson*, 26 Ohio St.2d 74, 269 N.E.2d 118 (1971), the Ohio Supreme Court explained that in determining the admissibility of an in-court identification, trial courts should consider whether the in-court identification was a product of an improper pretrial identification procedure or whether the in-court identification "came from some independent recollection and observation of the accused by the witness." *Id.* at 77. *State v. Culbertson*, 5th Dist. Stark No. 2018CA00183, 2020-Ohio-903, ¶ 47.

{¶ 29} Generally, where the totality of the circumstances establishes a reliable in-court identification, that identification will be upheld. *State v. Gales*, 8th Dist. Cuyahoga No. 102809, 2016-Ohio-588, ¶ 30, citing *State v. Monford,* 190 Ohio App.3d 35, 2010-Ohio-4732, 940 N.E.2d 634 (10th Dist.).

{¶ 30} A trial court must determine the reliability of a witness identification by considering the following factors: 1) the witness's opportunity to view the suspect at the time of the incident, 2) the witness's degree of attention, 3) the accuracy of the witness's prior description, 4) the witness's certainty when identifying the suspect at the time of the confrontation, and 5) the time that elapsed between the crime and the identification. *State v. Howell*, 8th Dist. Cuyahoga No. 92827, 2010-Ohio-3403, ¶ 14; *Neil v. Biggers*, 409 U.S. 188, 196-198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *State v. Waddy*, 63 Ohio St.3d 424, 439, 588 N.E.2d 819 (1992).

{¶ 31} S.C. observed a female with a short haircut come off the porch shooting a gun. However, when asked if, during the incident, she was able to see the individual who was shooting at her, S.C. testified, "Uh-uh, I don't know who the shooter is." (Tr. 50.) She did not see a face but was sure the shooter was a female. S.C. stated, "Her hair was cut like a short-cut like she had short-cut hair. That's what

I remember. I don't know what she look[s] like. I don't know her. I don't know her." (Tr. 55.) S.C. clarified that at the time of the shooting, she only saw the shooter's hair and the back of her body as she came off the porch firing the gun. Furthermore, S.C. admitted that her in-court identification of M.I. was based on pictures she saw after the incident. We find that S.C. did not have a sufficient opportunity to view M.I. at the time of the shooting. Therefore, S.C.'s in-court identification was unreliable, and the trial court erred in admitting it. An error is harmless when it does not affect the outcome of the trial. *In re T. A. F.*, 9th Dist. Medina No. 09CA0046-M, 2010-Ohio-3000, ¶ 19, citing *State v. Bullard*, 9th Dist. Wayne No. 08CA0034, 2009-Ohio-1826, ¶ 10.

{¶ 32} Here, the outcome is not affected because M.I.'s identity was not reliant solely upon S.C.'s testimony of M.I.'s identification. K.H. also provided in-court identification of M.I. as the shooter. M.I. argues that S.C.'s identification was necessary to corroborate K.H.'s identification because she was combative and provided contradictory testimony. We find M.I.'s argument unpersuasive for two reasons.

{¶ 33} First, in "examining the record to determine this issue, we may give weight to the fact that the error occurred in a trial to the court, rather than in a jury trial." *E.g., State v. Cendo*, 8th Dist. Cuyahoga No. 41688, 1980 Ohio App. LEXIS 12839, 6 (Aug. 28, 1980); *State v. Eubank*, 60 Ohio St.2d 183, 187, 398 N.E.2d 567 (1979). We presume the trial court considered only the relevant, material, and competent evidence in arriving at a judgment unless the contrary appears from the

record affirmatively. *State v. White*, 15 Ohio St.2d 146, 151, 239 N.E.2d 65 (1968). The record demonstrates that the court found K.H.'s testimony regarding her identification of M.I. as the shooter reliable while disregarding the portions of K.H.'s testimony it found were not credible. Moreover, no affirmative evidence was identified indicating that the trial court relied on S.C.'s in-court identification.

{¶ 34} Second, K.H.'s in-court identification is reliable under the five-part reliability test for in-court identifications. K.H. had an opportunity to view M.I. during the incident. She saw M.I. grab the gun from R.C.'s waistband. K.H. recognized M.I. from her social media and Cash App photos and had spoken to M.I. on the phone on more than one occasion. K.H. described M.I. accurately and provided M.I.'s photo and contact information to the police shortly after the incident. K.H. testified with certainty that M.I. was the shooter, identifying her both before and during the trial. K.H.'s in-court identification, if believed, was sufficient to prove that M.I. was the shooter. Consequently, although the trial court erred when it overruled M.I.'s objection to the state's in-court identification, the error does not affect the outcome of the trial. The remaining evidence supported adjudications of delinquency for felonious assault, one- and three-year firearm specifications, and discharge of a firearm on or near a prohibited place. Accordingly, M.I.'s third assignment of error is overruled.

{¶ 35} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

EILEEN A. GALLAGHER, P.J., CONCURS;
EILEEN T. GALLAGHER, J., CONCURS IN JUDGMENT ONLY