[Cite as *State v. McMahon*, 2025-Ohio-11.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 30087 |
| | : | |
| v. | : | Trial Court Case No. 2023 CR 02320 |
| | : | |
| CHRISTOPHER GANESH MCMAHON | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on January 3, 2025

. . . . . . . . . . .

KYLE J. LENNEN, Attorney for Appellant

MATHIAS H. HECK, JR., by SARAH H. CHANEY, Attorney for Appellee

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Christopher Ganesh McMahon appeals from his conviction following a bench trial on one count of attempted abduction, a fourth-degree felony.

{¶ 2} McMahon contends his conviction was against the manifest weight of the evidence. He also claims the trial court erred in designating him a Tier I sex offender/ child-victim offender.

{¶ 3} We conclude that the evidence supported McMahon's conviction and that the trial court properly designated him a Tier I sex offender/child-victim offender. Accordingly, the trial court's judgment will be affirmed.

## I. Background

{¶ 4} A grand jury indicted McMahon on one count of attempted abduction for trying to remove a three-year-old child from the RiverScape Metro Park in Dayton. The incident occurred around 10:00 p.m. on August 2, 2023.

{¶ 5} The State's two primary witnesses were N.B. and B.M. Earlier in the day, they had been visiting the child's mother, B.J., who was close friends with B.M. After socializing at B.J.'s house, N.B. and B.M. took the child out for ice cream. The trio then went to RiverScape.

{¶ 6} N.B. testified that she was at a swing set with B.M. and the child when McMahon approached them. According to N.B., McMahon lifted the child up under her arms and turned to walk away with her. B.M. initially stopped McMahon from taking the child, but McMahon tried to pick her up a second time. After B.M. intervened again, N.B. headed toward a car with the child. Before starting to leave the scene, N.B. heard McMahon repeatedly saying "it's either [B.M.'s] life . . . or [the child's]." N.B. testified that she did not know McMahon.

{¶ 7} B.M. also testified that McMahon had approached and picked up the child. He stated that McMahon grabbed the child under the arms, picked her up, and tried to turn her around as if to carry her away. B.M. responded by hitting McMahon's hand and asking what he was doing. According to B.M., McMahon stated that he had been "sent"

to get the child. When McMahon tried to take the child a second time, B.M. shoved him. At that point, McMahon began saying "it's either your life or her life." B.M. smelled alcohol on McMahon's breath. B.M. kept pushing McMahon away until McMahon's friend, D.M., approached on foot and intervened. B.M. testified that neither he nor the child's mother knew McMahon.

{¶ 8} D.M. and McMahon attempted to walk away from the scene before being detained by Metro Park officers who ultimately arrested McMahon. One of the officers, Nathaniel Osborne, recalled McMahon behaving erratically and making "odd statements." In particular, McMahon said something about "the family gene being infiltrated."

{¶ 9} For his part, McMahon called two defense witnesses. The first witness, C.Y., lived in an apartment across the street from RiverScape. C.Y. testified that D.M. and McMahon had been drinking heavily at the apartment before leaving around 9:00 p.m. The second witness was McMahon's friend D.M., who resided with C.Y. at the apartment. D.M. confirmed that he and McMahon had been drinking before heading to RiverScape. While at the park, D.M. watched McMahon run up a hill ahead of him. Despite the darkness and his vantage point, D.M. testified that he saw McMahon reach the top of the hill and encounter N.B., B.M., and the child at the swing set. D.M. insisted that he never saw McMahon grab, lift, or even touch the child.

{¶ 10} Based on the evidence presented, the trial court found McMahon guilty of attempted abduction. It sentenced him to five years of community control and designated him a Tier I sex offender/child-victim offender. McMahon timely appealed, advancing two assignments of error.

## II. Analysis

**{¶ 11}** McMahon's first assignment of error states:

**THE COURT'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

**{¶ 12}** McMahon challenges the weight of the evidence to support his conviction. He asserts that the trial testimony of N.B. and B.M. lacked credibility because it contradicted their post-incident oral and written statements to police. McMahon claims N.B. and B.M. both reported that he had merely "tried" to pick up or grab the child. McMahon also claims N.B. told an officer that she did recall whether she saw him touch the child. Considering these post-incident statements along with D.M.'s testimony that he never saw McMahon touch the child, McMahon argues that the trial testimony of N.B. and B.M. lacked credibility and that his conviction was against the weight of the evidence.

**{¶ 13}** When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

**{¶ 14}** "Because the factfinder . . . has the opportunity to see and hear the

witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 1997 WL 476684, *4 (2d Dist. Aug. 22, 1997). "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2014-Ohio-3432, ¶ 24 (2d Dist.).

{¶ 15} With the foregoing standards in mind, we reject McMahon's manifest-weight challenge to his attempted-abduction conviction. In their written statements, N.B. and B.M. did reference McMahon's trying to pick up or grab the child. These statements, however, did not necessarily conflict with the witnesses' trial testimony. We reach this conclusion for at least two reasons. First, the written statements about McMahon's trying to pick up or grab the child reasonably could be interpreted more broadly to mean trying to abduct her. Second, the trial testimony of N.B. and B.M. established that McMahon picked up and grabbed the child and then unsuccessfully tried to do so again.

{¶ 16} It appears from the two witnesses' testimony that McMahon briefly lifted the child off of the ground one time. B.M. immediately intervened, causing McMahon to release the child. According to B.M.'s trial testimony, McMahon then "tried to go for her again." B.M. explained that McMahon "trie[d] to go get her again" and "tried to go back and grab her again." For her part, N.B. initially testified that McMahon picked the child up a second time. She then testified that he actually "tried to pick her up" because she

slapped his hand away in response to the second attempt. Officer Osborne also testified that N.B. and B.M. both had reported that McMahon "grabbed" the child but that he "was not able to get away with her." In light of the foregoing testimony, the trial court reasonably could have concluded that McMahon actually picked up or grabbed the child on the first occasion and that he then tried to do so a second time.

{¶ 17} Finally, we reject McMahon's claim that N.B. expressed uncertainty about whether she saw him even touch the child. His argument stems from a misreading of the trial transcript. The portion of the transcript he cites did not involve N.B. at all. The cited page involved a police officer testifying about an unidentified bystander who "did not recall whether or not she saw [McMahon] touch [the child]."

{¶ 18} As set forth above, the trial court found McMahon guilty of attempted abduction. The abduction statute provides: "No person, without privilege to do so, shall knowingly . . . [b]y force or threat, remove another from the place where the other person is found[.]" R.C. 2905.02(A)(1). An attempt occurs when a person purposely or knowingly engages in conduct that, if successful, would constitute or result in the offense. R.C. 2923.02(A). A criminal attempt requires a substantial step in a course of conduct planned to culminate in commission of the crime. *State v. Lewis*, 2023-Ohio-4687, ¶ 17 (2d Dist.).

{¶ 19} Here the weight of the evidence supported a finding that McMahon engaged in attempted abduction by picking up and grabbing the child victim and trying to turn her around as if to carry her away. This was not an exceptional case in which the evidence weighed heavily against McMahon's conviction. Accordingly, the first assignment of error is overruled.

{¶ 20} McMahon's second assignment of error states:

**THE COURT ERRONEOUSLY IMPOSED A SEX OFFENDER/CHILD-VICTIM ORIENTED OFFENSE REGISTRATION UPON DEFENDANT.**

{¶ 21} McMahon contends the trial court erred in designating him a Tier I sex offender/child-victim offender. He claims the designation required proof that he was not a parent of the victim. Absent evidence on that issue, McMahon insists that the trial court could not designate him a Tier I sex offender/child-victim offender.

{¶ 22} Upon review, we find McMahon's argument to be unpersuasive. Under R.C. 2950.01(E)(2), a "Tier I sex offender/child-victim offender" includes "[a] child-victim offender who is convicted of, pleads guilty to, has been convicted of, or has pleaded guilty to a child-victim oriented offense and who is not within either category of child-victim offender described in division (F)(2) or (G)(2) of this section."

{¶ 23} The foregoing statute required McMahon to qualify as "[a] child-victim offender." It also required him to have been convicted of "a child-victim oriented offense" and not to fit within either of two particular categories. Under R.C. 2950.01(D), a "child-victim offender" includes a defendant who has been convicted of any "child-victim oriented offense." In turn, a "child-victim oriented offense" includes attempted abduction in violation of R.C. 2905.02(A)(1) but only "when the victim is under eighteen years of age and is not a child of the person who commits the violation[.]" *See* R.C. 2950.01(C)(2) and (C)(4).

{¶ 24} Based on the statute's language, we agree with McMahon that a Tier I sex offender/child-victim offender designation required proof that he was not a parent of the victim. Contrary to his argument, however, the record contains such evidence. B.M., who

was a good friend of the child's mother, testified that he never had seen McMahon before. Notably, B.M. also testified without objection that the child's mother did not know McMahon either. Based on this testimony alone, the trial court reasonably could have inferred that McMahon was not the child's parent. But because the disputed designation was made at sentencing, the trial court also properly considered a presentence investigation report. Information in that document confirmed that McMahon did not know the victim or her family. That being so, the record supported a finding that he was not the child's parent. The second assignment of error is overruled.

### III. Conclusion

**{¶ 25}** The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and HUFFMAN, J., concur.